UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

  

-----------------------------------------------------X

PROJECT TECHNOLOGIES
INTERNATIONAL, L.L.C.,

        Plaintiffs,

    -v-

PAUL LINSSEN, JAMES DUNN, CR
SOLUTIONS, LLC, ASSURE-TECH, LLC
and THOMAS RUTHERFOORD, INC.,
        Defendants.

**COMPLAINT**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★
MAY 0 5 2003
BROOKLYN OFFICE

SPATT, J.

WALL, M.J.

-----------------------------------------------------X

Plaintiff Project Technologies International, L.L.C. ("PTI" or "the

Company"), by its attorneys Kaufman, Schneider & Bianco, L.L.P, complaining

of defendants Paul Linssen ("Linssen"), James Dunn ("Dunn"), CR Solutions,

LLC  or Consolidated Risk Solutions, LLC or CRS, LLC ("CRS"), Thomas

Rutherfoord, Inc. and its affiliated companies ("Rutherfoord") and Assure-Tech,

LLC ("Assure-Tech"), alleges as follows:

## THE PARTIES

1.     PTI is a limited liability company organized under the laws of the

State of Delaware with its principal  place of business in Jericho, New York.  PTI

provides administrative services for "wrap-up" programs concerning the various

forms of insurance maintained by contractors, owners, etc., on large-scale

construction projects.

2.     Linssen is, upon information and belief, an individual, residing

outside of New York State or Delaware.  Linssen was formerly a member of PTI and its President.

3.      Dunn, is, upon information and belief, an individual resident of the State of Georgia.

4.      Rutherfoord is an insurance brokerage, which was party to an agreement with PTI, whereby PTI provided "wrap-up" administrative services for various projects.  Rutherfoord is, upon information and belief, incorporated in the State of Virginia, maintains a principal office at 550 Cherokee Avenue, Sutie 300, Alexandria Virginia 22312, but regularly does business in the State of New York.  Rutherfoord is part of a group of affiliated companies, including, *inter alia*, Rutherfoord Financial Services, Inc., and Assure-Tech all of which are, upon information and belief, known by the trade name of the Rutherfoord Companies.

5.      CRS is, upon information and belief, a limited liability company formed in Georgia.

6.      CRS, upon information and belief, maintains a principal office for the transaction of business in the State of Georgia at 1125 Cambridge Square, Suite A, Alpharetta, Georgia, 30004 and has opened offices and does business in other states.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction pursuant to the provisions of: (a)  Title 28 U.S.C. §1332, since there is complete diversity between the parties

2

and the amount in controversy exceeds $75,000, exclusive of interest and cost; (b) 18 U.S.C. §1030 et seq., The Computer Fraud and Abuse Act; and (c) Title 18, United States Code, §1937, on the principles of pendent jurisdiction.

8.    Venue is proper in this judicial district pursuant to Title 28, United States Code, §1391, in that the claims asserted in this action arose in this district and the Plaintiff's principal office is located in this district.

## FACTUAL ALLEGATIONS

### A. Summary

### The Business of PTI

9.    PTI was formed in April 1996 to administer what are known as "Wrap-Up" programs for construction projects in excess of $100,000,000.   A "Wrap-Up" is a risk management and financial tool that provides comprehensive and close control over construction related risks.   PTI first analyzes, *inter alia*, labor estimates by trade, project schedule and manpower reports to work with the sponsor of the project to permit the sponsor to determine the amount and type of insurance necessary for the project.   PTI, then administers the array of risk management programs, including insurance coverage, loss control/safety, and claims management services, providing what is known as "Wrap-up" administration.   The result is a more efficient and cost effective risk management program covering the entire project.   While the Wrap-up administrator does not purchase insurance for or on behalf of the contractors, a prime purpose of the "Wrap-Up" is to save money on the cost of insurance on large construction

projects through this form of risk management coordination. Risk management coordination via a Wrap-Up program also has other benefits for the owner of the construction project – reducing delays in the claims process, minimizing the prospect of coverage denials because of consistent coverage throughout the project and providing standard procedures for loss control and safety management.

10.   In administering these "Wrap-Up" programs PTI's success in the market place depends on two key assets – its highly trained personnel who require a specialized training in coordinating and administering sophisticated risk management programs for large scale construction projects and its state of the art software which provides it an enormous advantage over its competitors. Since its inception in 1996, this software program has been continuously updated and improved at a substantial expense.

**The Terms of Linssen's Employment as President of PTI**

On approximately May 13, 1998, Linssen became President of Project Technologies International L.L.C. At that time he signed an Amended Operating Agreement (the "Operating Agreement."), pursuant to which he became one of four managers of PTI and received a 10% equity interest in the Company. On or about June 30, 1998, Linssen received and executed a letter Employment Agreement (the "Employment Agreement").

**Linssen Was Obligated Not to Disclose or Use PTI's Confidential Information During and After His Tenure With PTI**

11.    The Operating Agreement contained a confidentiality provision prohibiting the defendant Linssen and other managers from disclosing to third parties the Company's confidential customer information or using that information in an effort to solicit or conduct business with the Company's customers or insurance companies:

> [Section 3.3:]  Each Member will keep confidential and will not reproduce, copy or disclose to any other person, firm or corporation any information relating to the names and business of customers or accounts, reports, systems, charts or other matters concerning any work done by the Company for customers or done in an effort to solicit or obtain customers or any particular arrangements with Customers or insurance companies.

**Linssen Was Obligated Not to Divert Customers from PTI During and for Two Years After His Tenure with PTI**

12.    The Operating Agreement and the Employment Agreement each prohibit Linssen and the other managers, while employed by the Company and for two years after their termination as a managers of the Company, from conducting business with Company customers and prospects and diverting Company business to themselves or third parties: The Operating Agreement provides:

> [Section 3.3:]  . . . each Member will not, while a Member of the Company and for a period of two years thereafter, solicit nor have any contact with any current customer of the Company, nor solicit potential customers if such potential customers are or were identified through leads developed during the

> course of said Member's employment with the
> Company, nor will they divert or attempt to divert
> any existing business of the Company to themselves
> or to other, third parties.

The Employment Agreement contains similar language.

## Linssen Was Obligated Not to Recruit or Hire PTI Employees for a Competitive Venture During and for Two Years After His Tenure with PTI

13.    The Operating Agreement and Employment Agreement each also

prohibit Linssen and the other members, while employed by the Company and

for two years after their termination as members of the Company, from hiring or

recruiting Company employees to work for a competitor:

> [Section 3.3:] . . . no member, while a Member of the
> Company (or for a period of two years thereafter)
> shall, either directly or indirectly, for themselves or
> for any third party, solicit, induce, recruit, or cause
> another person in the employ of the Company to
> terminate his/her employment for the purpose of
> joining, associating, or becoming employed with any
> business or activity which is in competition with any
> products sold, or any business or activity of the
> Company.

Again, the Employment Agreement contains similar language.

## Linssen Agreed That All PTI Records and Software Belonged Exclusively to PTI

14.    Linssen agreed in the Operating Agreement that all Company

documents and copies, whether in hardcopy or electronic form, and whether

created by the member or the Company, including software, is the exclusive

property of the Company and may not be removed from the Company or used

by the member after his termination as a member with the Company:

> [Section 3.3]  . . . upon termination of Membership with the Company, the departing Member will immediately deliver to the Company all data, manuals, specifications, lists, notes, computer software and hardware, computerized information and all other documents or tangible materials whatsoever, regardless of the media in which said information is stored, including all copies or duplicates concerning any part of the Company's activities and operations or concerning any part of the [departing] Member's activities and operations which are in any way related to the Company.  Each and every Member does hereby expressly acknowledge, as evidenced by their signature to this Agreement below, that all such documents, computerized and tangible materials, and copies or duplicates thereof, including their own notes, are the Company's property which are only entrusted to a Member on a temporary basis.   Any software, of any nature whatsoever which said Member as authored, created, devised, developed or otherwise produced or copyrighted since being employed by the Company is hereby expressly acknowledged by each Member to this Agreement to be the exclusive property of the Company unless otherwise agreed to in writing, by the Company.   Such software and intellectual properties are, each and all, expressly agreed to be the exclusive property of the Company and may not be removed or be used by any Member (or his estate) after his respective termination of employment, withdrawal as Member or Manager, or death.
>
> No member shall, while a Member of the Company (or for two years thereafter), except as required in the conduct of the Company's business or as authorized in writing by the Company, use, publish, disclose, appropriate or communicate, directly or indirectly, any of the following information which they have, in any way, acquired or may, hereafter acquire during, or by reason of, their affiliation with the Company: (a) marketing, sales, service, cost, business method,

formulae, product specifications, as well as customer lists and any other information which could give any third party an opportunity to obtain an advantage over competitors who did not know such information; and (b) trade secrets, which are or may have been used in the Company's business and give or may have given the Company an opportunity to obtain an advantage over competitors who do not know them.

## During and After Linssen's Tenure as PTI's President, Linssen and Dunn Schemed to Steal PTI's Business for His Own Benefit

15.    Beginning in or about January 1, 2001, Linssen and Dunn initiated a plan to steal PTI's customers. In effectuating that plan, they prepared an offering for a new business to be known as "The Lindun Group" that was expressly designed to misappropriate PTI's personnel, its software program, its customer relationships and its confidential and proprietary and trade secret protected materials.

## During and After His Tenure as PTI's President, Linssen Solicited PTI's Personnel

16.    Linssen secretly recruited PTI's employees, including Dunn, Bruce Banks ("Banks") and Jennifer Baker ("Baker") to join the new business he was forming to compete with PTI. That new business is now known as CRS or CR Solutions, LLC. Dunn had been responsible for developing and updating PTI's software program, Banks was PTI"s National Sales Manager, and Baker was involved in account management and customer relations.

8

**Linssen and Dunn Stole PTI's Confidential and Proprietary and Trade Secret Protected Information and with Assure-Tech, Misappropriated (and reverse engineered) PTI's "Wrap-up" software**

17.     Linssen misappropriated a PTI laptop computer that had been assigned to him when he worked at PTI.  That computer, which the defendant Linssen has repeatedly refused to return, contained virtually every bit of data and every document Linssen ever received or generated on behalf of PTI.  This critical and trade secret information, developed over many years at substantial expense to PTI, included, the software program used for providing "wrap-up" services, pricing information, marketing materials, business leads and customer data.   Furthermore, as President of PTI, Linssen retained on his computer confidential information regarding the business operation of PTI, including financial information and planning, minutes of internal and external meetings, strategic information and other business related material.

18.     Dunn returned his computer to PTI, but only after he had removed all data previously contained therein, including much if not all of PTI"s confidential data, including without limitation, files regarding all extant accounts and projects of PTI, the "Wrap-up" administration software itself, marketing proposals, etc.  In essence, Dunn returned an empty shell, a piece of computer hardware with no data whatsoever.

19.     Upon information and belief, Linssen and Dunn provided their PTI computers (or the software, programs and files that had been contained therein) to Assure-Tech.  Assure-Tech then reverse engineered PTI's "wrap-up" software

to fabricate a slightly different version thereof, which was made available to the

Rutherfoord Companies

**Linssen and Dunn Schemed to Deprive PTI of Its Customer and Business Relationships**

20.     Upon information and belief, both before and after their separation

from employment with PTI, Linssen and Dunn tried to and partially succeeded

in diverting PTI's existing and potential business and in harming PTI's customer

relationships.  Their actions are believed to include, but are not limited to:

a)     Linssen began working on behalf of Rutherfoord/CRS,

using PTI's software, to provide wrap-up services for a construction project for a

company known as Corrillian.  Rutherfoord had been a PTI customer and PTI

provided just such services to Corrillian and others;

b)     While Dunn isolated Wellman from PTI's chairman and

majority shareholder, Linssen and/or Dunn diverted Wellman Inc., a PTI

customer, to his own business through Rutherfoord, after.   Dunn cancelled

scheduled meetings between PTI's chairman and Wellman, lying about flight

cancellations that never occurred and otherwise took steps to assure that PTI

would never be given the opportunity to provide Wellman with a basis for

reconsideration of any transfer of its "wrap-up" business;

c)     Linssen caused PTI to lose an opportunity for "wrap-up"

services on behalf of a company known as Hardin after PTI incurred significant

expenditures of time and money in cultivating this lead.

       d)    Linssen, during his tenure as President of PTI scheduled meetings to present the Lindun Group offering to companies such as Wells Fargo/Accordia, AIG Insurance, Hunt Construction/Insurance Partners, etc.

       e)    After PTI spent years developing a broker marketing program, by contacting thousands of brokers across the country and identifying those few who might have clients needing "wrap-up" administration, Linssen (and others working on his behalf) stole the list of relevant brokers and solicited virtually all of said brokers.

       f)    While in PTI's employ, Linssen and, upon information and belief, Dunn prepared the Lindun Group proposal and provided same to customers and competitors of PTI, thereby revealing PTI's confidential data to its competitors.

### AS AND FOR A FIRST CLAIM FOR RELIEF AGAINST LINSSEN, DUNN AND ASSURE-TECH

**Computer Fraud and Abuse Act**

21.    The Computer Fraud and Abuse Act, 18 U.S.C. §1030 et seq., permits any person who suffers damage or loss by reason of the criminal activity prohibited by this federal criminal statute to bring a civil action for damages and injunctive relief.

11

22.     From Linssen'sseparation from employment with PTI, if not before, Linssen, Dunn and, upon information and belief, Assure-Tech, knowingly and with intent to defraud, accessed the computers and software owned by PTI and obtained valuable strategic business, financial and customer and supplier information of PTI, as well as PTI's software program used to provide "wrap-up" services.

23.     The object of the fraud obtained and the value of the computer and information is more than $5,000 in violation of federal criminal law, 18 U.S.C. §1030(a)(4).

24.     By reason of the acts alleged herein the Plaintiff has been injured in an amount to be determined at trial.  In addition, because its remedy at law is inadequate, Plaintiff seeks injunctive relief to protect its confidential and proprietary business and financial information, its goodwill, and other legitimate business interests.

## AS AND FOR A SECOND CLAIM FOR RELIEF AGAINST LINSSEN AND DUNN

**Breach of Fiduciary Duty**

25.     As the President and Vice President of PTI, Linssen and Dunn, respectively, owed PTI a fiduciary duty of the utmost good faith and loyalty. This duty includes, *inter alia*, a duty of candor, a duty not to act in any manner inconsistent with the best interests of PTI, a duty not to engage in or associate with a venture or business competitive with PTI, and a duty not to exploit, in competition with PTI, the confidential and proprietary knowledge and

information about PTI's products, technology, software, processes, customers, independent insurance brokers and insurance companies.

26.     While in PTI's employ, Linssen and Dunn breached their fiduciary duties to PTI by:

      a.     Surreptiously and deceitfully establishing and secretly operating CRS or its predecessor, a business in direct competition with PTI;

      b.     Stealing PTI's materials, confidential information and trade secrets and using them in competition with PTI;

      c.     Using PTI's trade secrets (or copyright);

      d.     stopping others acting on behalf of PTI from soliciting potential customers (e.g., Hardin) on behalf of PTI;

      e.     preparing the Lindun Group proposal and providing same to customers and competitors of PTI, thereby revealing PTI's confidential data to its competitors.

      f.     Otherwise self-dealing in violation of known duties as a director and/or employee of PTI.

27.     As a result of the defendants' wrongdoings, PTI suffered and continues to suffer monetary damages as well as substantial irreparable injury due to the loss of business from its customers and potential customers.  PTI also suffered damage to its established customer relationships and relationships with independent insurance brokers and insurance companies.

28.     By reason of the acts alleged herein the Plaintiff has been injured in an amount not yet fully calculated, but believed to be in excess of $3,198,464.00. In addition, because its remedy at law is inadequate, PTI seeks injunctive relief to

protect its confidential and proprietary business and financial information, and economic relationships.

## AS AND FOR A THIRD CLAIM FOR RELIEF AGAINST LINSSEN AND DUNN

### Tortious Interference With Prospective Economic Advantage

29.     PTI has valid business relationships with its customers.

30.     Linssen and Dunn were fully aware that PTI entered into such valid business relationships with its customers.

31.     Linssen and Dunn interfered in those valid relationships by using dishonest, unfair, or improper means, to acquire business from PTI's customers, in one or more of the following ways:

> a)     using PTI's software, confidential data and trade secrets;

> b)     inducing one or more of PTI's customers to replace their business with services offered by CRS or Rutherfoord; and

> c)     otherwise dishonestly, unfairly or improperly interfering with and sabotaging PTI's relations with its customers, independent insurance brokers and insurance companies.

32.     As a result of the defendants' wrongdoings, PTI suffered monetary damages not yet fully calculated but believed to be in excess of $4,090,464.00 and substantial and irreparable injury due to the use of its software, the loss of its trade secrets and property, and the loss of the business and goodwill of its

customers, for which there is no adequate remedy at law to compensate PTI.

## AS AND FOR A FOURTH CLAIM FOR RELIEF AGAINST LINSSEN AND DUNN

### Misappropriation of Trade Secrets

33.     Linssen and Dunn misappropriated, used and continue to use PTI's trade secrets in offering services directly competitive with PTI.

34.     Linssen and Dunn exploited and made wrongful use of PTI's trade secrets and exploited the goodwill of PTI, for their own self-interest and to compete unfairly against PTI.

35.     As a result of the defendants' wrongdoings, PTI suffered monetary damages not yet fully calculated, but believed to be in excess of $2,090,464.00 and substantial and irreparable injury due to the loss of its trade secrets and property, and the loss of the business and goodwill of its customers, for which there is no adequate remedy at law to compensate PTI.

## AS AND FOR A FIFTH CLAIM FOR RELIEF AGAINST LINSSEN AND DUNN

### Conversion.

36.     Linssen and Dunn, with the intent to steal and divert PTI's business, customers and established relationships with independent insurance brokers and insurance companies, misappropriated and wrongfully exercised dominion and control over the property of PTI, including a laptop computer and PTI documents and records containing proprietary information regarding PTI's processes, products, technology, marketing materials, customers, and insurance

brokers and companies with whom PTI had established relationships.

37.     Such taking and continued dominion and control over PTI's property by Linssen and Dunn was and is wrongful, intentional, and malicious.

38.     As a result of Linssen's and Dunn's wrongdoings, PTI suffered substantial and irreparable injury due to the loss of its trade secrets and property, and the loss of the business and goodwill of its customers, for which there is no adequate remedy at law to compensate PTI.

## AS AND FOR A SIXTH CLAIM FOR RELIEF AGAINST LINSSEN

**Breach of Contract.**

39.     PTI, and Linssen have, for good consideration, entered into valid, binding and enforceable contracts.

40.     PTI fully performed its obligations under the Employment Agreement, but the defendant Linssen has breached the aforedescribed provisions of his Employment Agreement.

41.     As a result of the defendant Linssen's wrongdoings, PTI suffered and continues to suffer monetary damages not yet fully calculated but believed to be in excess of $7,234,144.00 and substantial and irreparable injury due to the loss of its trade secrets and property, and the loss of the business and goodwill of its customers, for which there is no adequate remedy at law to compensate PTI.

42.     Linssen should be permanently enjoined from violating the anti-solicitation covenants contained in the Employment Agreement and the Operating Agreement.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF AGAINST RUTHERFOORD

### Inducing Breach of Contract, Breach of Fiduciary Obligations and Breach of the Duty of Loyalty

43.     Rutherfoord was fully aware of the anti-solicitation covenants agreed to by Linssen and Linssen's fiduciary obligations and Linssen and Dunn's Duties of Loyalty to PTI via both oral and written communication with either PTI's chairman or PTI's counsel.

44.     Rutherfoord was initially aware of the relationship between Linssen, Dunn and PTI as PTI's chairman attended numerous presentations with Rutherfoord representatives.  These presentations were designed to familiarize clients and potential clients of Rutherfoord with the wrap-up services Rutherfoord could provide through PTI and to solicit said business.

45.     Linssen and Dunn are now employed by or on behalf of Rutherfoord, via CRS or otherwise.

46.     Rutherfoord employed and/or continues to employ Linssen/Dunn/CRS knowing that in doing so, Linssen is breaching his agreements with PTI, Linssen is breaching his fiduciary obligations to PTI and Linssen and Dunn, acting in reliance upon said employment/relationship previously breached their duties of loyalty to PTI.

47.     Rutherfoord is and has thereby intentionally induced Linssen to

breach his contracts with PTI, Linssen to breach his fiduciary obligations to PTI and Linssen and Dunn to breach their duties of loyalties to PTI.

48.     Rutherfoord is therefore indebted to PTI, jointly and severally with Linssen for all damages caused by said breaches (e.g., the solicitation of PTI customers and employees).

49.     Rutherfoord is therefore indebted to PTI in an amount not yet fully calculated but believed to be in excess of $7,234,144.00

### AS AND FOR AN EIGHTH CLAIM FOR RELIEF AGAINST CRS

**Inducing Breach of Contract, Breach of Fiduciary Duties, Breach of Duties of Loyalty, Tortious Interference, Conversion and Misappropriation of Trade Secrets,**

50.     CRS actively participated in each of the breaches and torts described above, perpetrated by Linssen, Dunn, Assure-Tech and Rutherfoord.

51.     CRS is therefore equally jointly and severally liable to PTI in an amount not yet fully calculated but believed to be in excess of $7,234,144.00

WHEREFORE, PTI prays for a judgment:

A)     jointly and severally against the Defendants, Linssen, Dunn, Rutherfoord, Assure-Tech and CRS in an amount not yet fully calculated but believed to be in excess of $7,234,144.00;

B)     jointly and severally against Dunn and Linssen in an amount not yet fully calculated but believed to be in excess of $4,090,464.00;

C)     permanently enjoining Linssen:

1) to comply with the anti-solicitation covenants of the Employment Agreement and the Operating Agreement, including, but not limited to an injunction barring Linssen from:

    a)    using or disclosing to any third party any confidential information or trade secret belonging to PTI;

    b)    conducting business with any of PTI's customers;

    c)    conducting business with any of PTI's suppliers including insurance brokers and insurance companies; and

    d)    recruiting, hiring, contacting, communicating with or working with any individual currently employed by PTI or employed by PTI anytime within the prior two years; and

2) to return to PTI the laptop computer wrongfully converted and used by Linssen, as well as all information contained thereon, including, but not limited to, all of PTI's customer data and computer software.

D) requiring an accounting of CRS' sales and profit from its inception to the present; and

(E) Such other and further relief as the Court deems just and proper.

Dated: Jericho, New York
    May 1, 2003

                Kaufman, Schneider & Bianco, L.L.P.
                Attorneys for Plaintiff

                By _____
                  Richard M. Howard (RMH – 2932)

                  390 North Broadway

                  Jericho, New York 11753

                  (516) 681-1100

Rich/Allied/Project/complaint3